Frank **McKELVIE** and Sharon **McKelvie, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION; City of Mount Clemens, Michigan; the Detroit Edison Company; and Florence Cement Company, jointly and severally, Defendants.**

No. 88–CV–70446–DT.

United States District Court, E.D. Michigan, S.D.

Jan. 23, 1990.

---

Richard M. Goodman, Goodman Lister Seikaly & Peters, Detroit, Mich., for plaintiffs.

Daniel F. Stella, Dykema Gossett, Detroit, Mich., for General Motors.

George E. Petersmarck, Jr., Petersmarck, Callahan, Bauer & Maxwell, Detroit, Mich., for City of Mount Clemens, Mich.

William J. Lange, The Detroit Edison Co., Detroit, Mich., for Detroit Edison.

George W. Coticchio, Coticchio, Zotter, Sullivan, Molter, Skupin & Turner, Detroit, Mich., for Florence Cement.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is currently before the Court on two motions for summary judgment filed by defendants City of Mount Clemens and Florence Cement Company.

## FACTS

On January 5, 1985, plaintiff Frank McKelvie was involved in an accident at the intersection of New Street and Pine Street in the City of Mount Clemens, Michigan. Plaintiff's car was struck on its right side by another vehicle. Plaintiff's vehicle then collided with a pole owned by Detroit Edison, which was located on the southwest corner of New Street and Pine Street.

As a result of the accident, plaintiff suffered a permanent injury to his spinal cord, causing complete quadriplegia. Plaintiff is unable to work in any gainful employment. He has incurred extensive medical expenses and is unable to enjoy the normal functions of life.

Plaintiff, his wife, and their children, filed suit against the City of Mount Clemens on March 17, 1986. Detroit Edison was later added as a defendant to the lawsuit. On January 5, 1988, plaintiffs filed suit against the Florence Cement Company. These actions were originally filed in the Macomb County Circuit Court by plaintiffs' attorney, Mr. Herbert J. Rusing.

In the spring of 1988, plaintiffs' attorney conducted settlement negotiations with counsel for defendant City of Mount Clemens and defendant Florence Cement Company. Both defendants claim that settlement offers were made to plaintiffs, which plaintiffs accepted through their attorney, Mr. Rusing. Plaintiffs, however, allege that no such settlements were reached. Instead, plaintiffs claim they discussed settlement, but never agreed to accept any settlement offers.

On the basis of these alleged settlement agreements, both defendants have moved for summary judgment. Defendants claim that plaintiffs are bound by the written settlement agreements entered into by their attorney. Because the facts and circumstances relating to these two motions are so similar and so closely related, the Court will rule on both summary judgment motions at the same time.

## LAW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summa-

ry judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

Both defendants claim that a settlement agreement was reached between themselves and the plaintiffs while the suit was pending in the Macomb County Circuit Court. Defendants base this argument on the claim that evidence of these settlement agreements does exist in the form of written letters sent to the defendants and signed by the attorney then representing the plaintiffs, Mr. Herbert Rusing. Defendants rely on Michigan Court Rule 2.507(H) to support their claim that plaintiffs are bound by the written agreement signed by their attorney. Michigan Court Rule 2.507(H) provides:

> "An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney."

The specific writings which defendants rely on as evidence of the settlement agreement are letters sent by plaintiffs' attorney, Mr. Rusing, to defense counsel.

On May 6, 1988, Mr. Rusing sent to counsel for defendant, City of Mount Clemens, a letter indicating that plaintiffs accepted the City's $10,000.00 settlement offer. The letter stated as follows:

> Dear Mr. Ryan:
>
> My clients will accept your offer of $10,-000 in settlement. I will get back to you on how the checks should be drawn up.
>
> Thank you for your cooperation.

The letter was signed by Mr. Rusing.

On May 16, 1988, Mr. Rusing sent to counsel for defendant, Florence Cement Company, a letter indicating that plaintiffs were not sure about whether to accept a $10,000.00 settlement offer from Florence Cement. However, the letter did indicate that plaintiffs wanted to consider the offer. The relevant portion of that particular letter stated as follows:

> At this point, my clients are not sure about the settlement and want to give it some thought before they agree to your

settlement offer of Ten Thousand and 00/100 ($10,000.00) Dollars.

I have indicated to them the offer, but as of this time, I would suggest that you proceed with this case as if no settlement were arrived at.

After further negotiations, defense counsel's secretary received a phone call on May 20, 1988 from Mr. Rusing's office indicating that plaintiffs had settled for $15,000.00. This message was confirmed by Mr. Rusing in a letter to counsel for Florence Cement, dated May 25, 1988. The letter stated:

> Kindly be advised that I discussed this matter with my clients again and they are agreeable to accepting $15,000 in settlement from your client.
>
> In my opinion this is a small amount considering the nature of my client's injury, which consists of a complete quadriplegia.
>
> My clients, however, are aware of the fact that they can receive a much larger verdict, the same amount or nothing at all. They both advise me that they are agreeable to accepting the settlement in the amount of $15,000.
>
> If your company is still willing to enter into this settlement, then please let me know. If they are not, then please let me know as well and I will proceed with further discovery and trial preparation. If the case can be settled, then I would appreciate your making a check out for $100 payable to Barbara McKelvie, $100 payable to Kathleen McKelvie, $100 payable to Frank McKelvie, as parent of Daniel McKelvie and $14,700 payable to Frank McKelvie and Sharon McKelvie. Thank you for your usual courtesy and cooperation.

The letter was signed by Mr. Rusing.

Defendants claim that these letters indicate that an accord and satisfaction was reached. According to defendants, settlement offers were made and then accepted by plaintiffs through their attorney. Therefore, defendants assert that plaintiffs are bound by these settlement agreements because pursuant to M.C.R. 2.507(H), the agreements are in writing and subscribed by the party against whom the agreement is offered or by that party's attorney. As a result, defendants claim that no genuine issue of material fact exists and defendants are entitled to judgment as a matter of law.

Plaintiffs dispute the existence of any agreement to settle their claims against defendants. According to Mr. McKelvie's deposition testimony, he never accepted any offers to settle with the City of Mount Clemens or Florence Cement Company. (Deposition of Frank McKelvie, pp. 502–526). Plaintiff, Sharon McKelvie testified that she had received settlement offers, but she informed Mr. Rusing that she would not accept the sums offered to settle plaintiffs' claims. (Deposition of Sharon McKelvie, pp. 180–190). According to plaintiffs, defendants have failed to prove that plaintiffs accepted any settlement offers from defendants. Plaintiffs assert that the letters signed by Mr. Rusing are not conclusive as to settlement in this matter because in his letters, Mr. Rusing advised counsel for both defendants that further discussion would be necessary regarding how the settlement checks should be drawn. Therefore, plaintiffs claim no agreement was reached.

Furthermore, plaintiffs contend that whether or not a settlement was reached in this case is a question of fact for the trier of fact and, therefore, summary judgment would be inappropriate. Plaintiffs contend that the intention of the parties is almost always a question of fact for the jury to determine. Plaintiffs cite the *Fritz v. Marantette*, 404 Mich. 329, 335, 273 N.W.2d 425 (1978), wherein the Court stated:

> it is clear that whether a particular set of facts amounts to an accord and satisfaction is generally a question of fact for the fact finder. One of the key elements which the trier of fact must find to reach the conclusion that an accord and satisfaction exists, is a "meeting of the minds."

Plaintiff has cited to several cases in order to argue that disputes as to the existence of a settlement present questions of fact for the jury. The Court, however,

finds that these cases are distinguishable from this particular lawsuit.

In *Fritz*, the issue was whether the negotiation of a check, after striking part of a restrictive condition and protesting the amount received, acted as an accord and satisfaction. The court found that under Michigan law the answer to this question depended on the facts of the individual case. According to the court, most cases presented a question of fact for the jury. *Fritz*, 404 Mich. at 332, 273 N.W.2d 425. In *Fritz*, the plaintiff orally agreed to sell 20,000 bushels of corn to defendant. Defendant purchased for resale to a Chicago broker. Defendant then realized he could not obtain the contract price on the Chicago market because the corn was not of the expected grade. Defendant indicated he could receive more money on the Toledo market than on the Chicago market. The parties agreed to a contract price on the Toledo market of $24,000.00. After the corn was delivered, defendant sent plaintiff a check for $15,252.21. This represented the $24,000.00 minus the Chicago damages. The back of the check contained a standard printed statement which said, "[B]y endorsement of this check when paid is accepted in full payment of the following account." Handwritten under that language was "corn contract paid in full." After discussions with defendant, plaintiff crossed out the handwritten wording and deposited the check. Plaintiff then sued defendant for the balance of the contract price.

Defendant claimed that plaintiff knew about defendant's contractual obligation to a Chicago broker. Therefore, defendant claimed that plaintiff agreed to a deduction in order to allow defendant to make good on that contract. Plaintiff, however, claimed that when he was told by defendant that a deduction would be necessary, plaintiff refused to let defendant remove the remaining 10,000 bushels of corn. However, after defendant agreed to pay $1.24 or $1.25 per bushel, plaintiff claimed that this implied that defendant would not seek deductions from his contract with plaintiff in order to pay for losses suffered because of the Chicago agreement.

In *Fritz*, the court found that plaintiff's negotiation of the check was not an accord and satisfaction as a matter of law. According to the court, a jury could have concluded that defendant's agreement to the $1.24 or $1.25 per bushel price, after plaintiff had refused to release the rest of the corn, was in fact an implied agreement that no deductions would be made due to the loss on the Chicago contract.

On the other hand, the jury could have found that the negotiated check represented the full payment on the contract. The dispute was only over the amount to be deducted as damages because of the inferior corn delivered and the amount deducted from the check represented the actual damages asserted, instead of an attempt to compromise or settle. As a result, genuine issues of material fact needed to be determined by a jury.

In *Obremski v. Dworzanin*, 322 Mich. 285 (1948), the issue was whether or not the acceptance of the refunded deposit and subsequent return of an abstract constituted a mutual recession of the original contract such that plaintiff surrendered his right to seek liquidated damages. The court found that the parties only did what they were required to do under the agreement. No settlement was ever discussed and no release of plaintiff's claim was ever discussed. The Court determined that from its review of the record, there had been no abandonment or accord and satisfaction of plaintiff's right to pursue his liquidated damages claim.

■ In this instance, however, the issue is more simplistic and the intention of the parties is much clearer. The question as to whether or not the parties ever had a "meeting of the minds" is much easier to resolve. Neither party has disputed that offers were made in good faith. Despite plaintiffs' claims, the letters of their former attorney, Mr. Rusing, do indicate that plaintiffs accepted those offers. Phrases such as, "I discussed this matter with my clients again and they are agreeable to accepting $15,000 in settlement from your client" and "my clients will accept your

offer of $10,000 in settlement," do not create questions concerning the intentions of the parties. These statements indicate that there was, in fact, a meeting of the mind. Defendants made offers and the plaintiffs accepted the offers.

■ In determining whether summary judgment is appropriate, the Court cannot attempt to reconcile disputed fact questions where credibility is in issue, except where the facts are such that no reasonable minds might disagree. *Anderson v. Sanders*, 14 Mich.App. 58, 60, 165 N.W.2d 290 (1968). In this instance evidence of settlement is clear. No reasonable minds can disagree that a settlement was reached and notice of the settlement was given to defendants.

■ Plaintiffs allege that settlement was not reached because of the fact that further discussions were needed in order to determine how settlement checks should be drawn. The Court finds that this claim is without merit. Mr. Rusing did inform counsel for the City of Mount Clemens that he would get back to him on how to draw up the checks. However, in Mr. Rusing's letter to counsel for Florence Cement, this matter was already ironed out. Mr. Rusing informed Florence Cement that plaintiffs had accepted the offer and that checks should be drawn in the following amounts: $100 to Barbara McKelvie, $100 to Kathleen McKelvie, $100 to Frank McKelvie, as the parent of Daniel McKelvie, and $14,700 to Frank McKelvie and Sharon McKelvie. Further discussions certainly were not needed with respect to Florence Cement Company. Mr. Rusing's letter clearly indicated how plaintiffs wanted the settlement checks to be drawn.

With regard to the letter sent to the City of Mount Clemens, the existence of a settlement for a specific sum cannot be destroyed by the fact that the plaintiffs had not yet indicated how that sum was to be divided. The fact that this was not yet done with regard to defendant, City of Mount Clemens, does not change the overall conclusion that plaintiffs clearly settled with the city for $10,000.00 and with Florence Cement for $15,000.00.

On June 1, 1988, defendant Florence Cement, informed plaintiff that a Release and Indemnity Agreement, as well as a Stipulation and Order of Discontinuance, were being placed in the mail for plaintiffs to sign. However, plaintiffs apparently changed their minds at some point and decided to back out of the settlement.

Because these settlement offers were accepted in writing by plaintiffs' attorney, plaintiffs are bound by their agreement to settle their case against defendants. Plaintiffs contend that M.C.R. 2.507(H) is inapplicable because it is limited to trial proceedings. Plaintiffs also claim the agreements were not made in open court. Plaintiffs claim that the rule deals specifically with conduct of trials. However, this Court finds that subpart (H) deals with agreements respecting the proceedings in an action. The phrase, "proceedings in an action," extends beyond actual trial because the rule binds parties to agreements made either in open court or agreements evidenced in writing signed by the party against whom the agreement is offered or by that party's attorney. Therefore, the rule is applicable in this instance and plaintiffs are bound by their written acceptance.

## CONCLUSION

Based upon the foregoing, this Court finds that no genuine issues of material fact exist. Defendants are entitled to judgment as a matter of law. Therefore, this Court hereby GRANTS defendant City of Mount Clemens' motion for summary judgment. The Court also GRANTS defendant, Florence Cement Company's motion for summary judgment.

IT IS SO ORDERED.