**Preston A. WASHINGTON, Jr., Appellant,**

v.

**DISTRICT OF COLUMBIA, et al.**

No. 85–5874.

United States Court of Appeals, District of Columbia Circuit.

Argued May 29, 1986.

Decided Oct. 14, 1986.

Mark J. Diskin, with whom MacKenzie Canter, III, Washington, D.C., was on the brief, for appellant.

Beverly J. Burke, Asst. Corp. Counsel of the District of Columbia, a member of the bar of the D.C. Court of Appeals, pro hac vice, by special leave of court, with whom John H. Suda, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before STARR, SILBERMAN, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellant, Preston A. Washington, Jr., while employed as a guard at the District of Columbia's Lorton Reformatory, was attacked and severely injured by a prisoner. Appellant alleges that the attack resulted from the reckless failure of Lorton and District of Columbia officials to remedy unsafe conditions at the reformatory. Mr. Washington brought an action under 42 U.S.C. § 1983 (1982), arguing that the recklessness of these officials, while acting under color of state law, had deprived him of liberty without due process of law.

The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set out below, we find that the reckless failure of state officials to remedy unsafe prison conditions does not deprive a prison guard of a liberty interest secured by the Fourteenth Amendment. We therefore affirm the district court's dismissal.

## I. BACKGROUND

In assessing the propriety of the district court's order dismissing the action, "we must accept as true all of the material allegations in the [appellant's] complaint." *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C. Cir.1984). The facts of this case, as represented by appellant, are as follows.

While employed as a guard in the maximum security facility of the District of Columbia's Lorton Reformatory, appellant was brutally attacked by an inmate and sustained severe and permanent injuries. Prior to this attack, appellees in this case, officials of the reformatory and of the District of Columbia, had been warned of unsafe conditions at Lorton and were under court order to correct them. *John Doe v. District of Columbia*, C.A. No. 79–1726 (D.D.C. June 30, 1980). Nevertheless, appellees failed to take remedial action. Appellant contends that this failure to act was grossly negligent and reckless,* and resulted directly in his injuries.

Among the dangerous conditions of which appellees had been warned were overcrowding of prisoners, paucity of guards, inadequate procedures for searching prisoners and their cells for weapons, and inadequate procedures for identifying and isolating prisoners with known violent tendencies. Appellant alleges that as a direct result of the failure to remedy these problems, a prisoner who was known to be psychologically unstable and violent was placed in a cell block normally housing only more easily controlled prisoners. Neither appellant nor any of the other guards on duty were informed of the threat posed by this prisoner. On the morning of April 2, 1983, the prisoner set a fire in his cell. Appellant attempted unsuccessfully to control the fire from outside the cell and then directed another guard to open the cell door. The prisoner emerged with a concealed steel leg post with which he attacked and injured appellant.

Under the D.C. Workmen's Compensation Act, D.C. Code § 1–624.1 *et seq.* (1981), appellant will receive two-thirds diminution in his wage-earning capacity as compensation for his injuries. The Act provides that this remedy "is exclusive and instead of all other liability of the District of Columbia government." Section 1–624.16(c). Nevertheless, appellant seeks an additional $20,-000,000 in compensatory and punitive damages under 42 U.S.C. § 1983, which provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

---

* In his brief, appellant alleges that appellees "knowingly" allowed the unsafe conditions to persist. At oral argument counsel for appellant clarified the allegation, stating that appellant did not contend that appellees had intentionally injured him. Rather, appellant alleges gross negligence and recklessness.

liable to the party injured in an action at law....

In order to make out a cause of action under section 1983, appellant must plead that "the conduct complained of was committed by a person acting under color of state law," and that "this conduct deprived [appellant] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Even if we assume the truth of appellant's allegation that appellees, while acting under color of state law, recklessly failed to correct dangerous conditions at Lorton, appellant's section 1983 action must fail.

## II. DISCUSSION

### A. *Section 1983 Does Not Federalize Tort Law*

Appellant seeks damages for injuries allegedly caused by the appellees' reckless failure to perform a duty owed him. Such a suit falls squarely within traditional state tort law. Appellant argues, however, that in addition to violating state law, the appellees' nonfeasance deprived him of a constitutionally protected right, *i.e.*, the Fourteenth Amendment right not to be deprived of a liberty interest without due process of law.

We must approach such a claim with extreme caution. The Supreme Court has repeatedly warned that section 1983 must not be used to duplicate state tort law on the federal level. In *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), the Court stated:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

The same warning is expressed in *Parratt v. Taylor*, 451 U.S. at 544, 101 S.Ct. at 1917 (1981), where a prison official had negligently lost an article of property belonging to a prisoner. The Court reasoned that allowing the prisoner to ignore the available state-law remedy and to characterize this negligent loss as a Fourteenth Amendment deprivation of property without due process, actionable under section 1983,

> would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983.... Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405] (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

*See also Daniels v. Williams*, — U.S. —, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) ("Our Constitution ... does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.").

■ As these cases make clear, section 1983 does not provide a remedy for any and all injuries inflicted by persons acting under color of state law. Rather, these cases draw a distinction between those rights secured by the Constitution or federal law and those secured only under state tort laws; section 1983 provides a remedy only for injuries to the former.

### B. *The Failure to Provide Prison Guards a Safe Working Environment Does Not Violate Any Constitutional or Federal-law Right*

The only constitutional or federal-law right of which appellant claims to have been deprived is the right secured by the Fourteenth Amendment not to be deprived of liberty without due process of law. We must determine whether appellees' failure to act could in fact have deprived appellant of any such interest.

Under the Fourteenth Amendment, appellant has a liberty interest in "personal security." *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). If appellees themselves had attacked and injured appellant and thus deprived him of this constitutionally secured interest in personal security, appellant might well have an action under section 1983, although the question would remain whether the availability of state due process in the form of workmen's compensation benefits would provide appellees with a sufficient defense.

■ In this case, of course, appellees are charged with something less than intentional conduct. While the Supreme Court, in *Daniels v. Williams*, did not consider whether recklessness or gross negligence might be "enough to trigger the protections of the Due Process Clause," 106 S.Ct. at 667 n. 3, we conclude that the reckless failure to act with which appellees are charged does not constitute a deprivation of "any rights, privileges, or immunities protected under the Constitution and laws" of the United States.

This alleged failure to remedy unsafe conditions may well have violated a tort-law duty. Under the common law of tort, an employer has a duty to provide, and an employee has a concomitant right to demand, a reasonably safe workplace. *See, e.g., Gordon v. Raven Systems & Research, Inc.*, 462 A.2d 10, 14 (D.C. App. 1983). Such tort-law rights and duties, however, are quite distinct from those secured by the Constitution or federal law. In *Paul v. Davis*, 424 U.S. at 700, 96 S.Ct. at 1160, the Court quoted approvingly from the plurality opinion in *Screws v. United States*, 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1038–39, 89 L.Ed. 1495 (1945):

> Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States.

We have found no cases holding that an employee's right to a safe workplace is secured by anything other than the state law of tort.

Nevertheless, appellant attempts to elevate this tort-law right to constitutional stature by invoking several cases recognizing that prisoners and others in the custody of the state have a constitutional right to safety. *See, e.g., Spence v. Staras*, 507 F.2d 554, 557 (7th Cir.1974) (State hospital inmate "had a right, under the Fourteenth Amendment, to be secure in his life and person while confined under state authority."); *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889, 890 (4th Cir.1973) ("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates....").

Appellant reasons that prison guards have the same constitutional right as has been recognized for those under state custody. The cases cited by appellant, however, rely on the fact of custody. For example, appellant cites *Doe v. New York City Dep't of Social Services*, 649 F.2d 134, 141 (2d Cir.1981), a case in which the Second Circuit made explicit the necessity of state custody to its holding. The court explained that "[w]hen individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution." Absent such a custodial relationship, no constitutionally secured duty to provide or right to demand protection arises.

The reason the state has a constitutional duty to protect those in its custody, but no such duty to protect others, was explained by the Seventh Circuit in *Walker v. Rowe*, 791 F.2d 507, 511 (7th Cir.1986). There the circuit court rejected the very argument advanced here by appellant: "These cases [recognizing that prisoners and others in the state's charge have a constitutional right to protection] are based on the principle that when the state takes someone into

its care or cuts off sources of private aid, the state must afford replacement protection." Thus the state is constitutionally obliged to protect prisoners because it has forced them into a situation where they cannot help themselves.

Prison guards, unlike the prisoners in their charge, are not held in state custody. Their decision to work as guards is voluntary. If they deem the terms of their employment unsatisfactory, *e.g.,* if salary, promotion prospects, or safety are inadequate, they may seek employment elsewhere. The state did not force appellant to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that occupation. *Accord id.* at 511 ("The state must protect those it throws into snake pits, but the state need not guarantee that volunteer snake charmers will not be bitten.").

### III. CONCLUSION

Whatever appellant's rights may be under state law, he has no constitutional right to a safe working environment. Therefore, appellees' failure to remedy safety problems at Lorton is not actionable under section 1983 as a deprivation of a Fourteenth Amendment liberty interest without due process of law. For this reason, the district court's dismissal of appellant's section 1983 action is

*Affirmed.*